Good afternoon, Your Honors. Paul Estor on behalf of the Plaintiffs and Appellants. Let me begin, Your Honors, with talking about the issues that are undisputed on this appeal. One, that HIPAA regulations went into effect to impose cost-based limits on charges to individuals. Hold on a minute. Let me direct your attention to what's on my mind so you can educate me and improve my thinking about this case. It looks to me as though what makes a lot of sense is if an individual can get his medical records for the reasonable cost of copying, his lawyer ought to be able to get them the same way. His lawyer is acting as his agent. It also looks to me as though the way HIPAA and the lawyer would just count as the individual, just like if you send your wife to pick up the envelope with your records over at the clinic after they've Xeroxed them. I agree. I don't see any problem with that as a matter of logic and interpretation of the words. But I do have a problem because it looks like the way the agency has interpreted its own regulations, that's not so. They don't treat the lawyer as the individual, even though he's acting as the individual's agent on behalf of the individual. So it looks like under Chevron we just need to defer to the agency's interpretation of its own regulation. What am I missing here? Well, Your Honor, there's a couple of things. One is the agency in interpreting their own regulations don't exclude or include agents. When I say that, basically the agency, the way we're looking at the statute and the way we're looking at the regulations, is basically putting agents in the same shoes as the individual. And, frankly, that is consistent with analogous cases throughout the country that have considered whether an attorney suing on behalf of the client may obtain recompense for excessive charges by medical company, medical records companies. And so, you know, our interpretation of what the agency is doing is, frankly, consistent with what we believe the law is. I thought they had some guidance where they said that agents don't count as the individual. Well, what had occurred, Your Honor, is that records companies requesting clarification of the regulations asked whether certain parties, third-party medical providers, attorneys but not defining attorneys for whom, and other parties who are not the individual or the personal representatives could be charged more than the cost-based fee. And what he is... Oh, so you think when they said attorneys, it might have just meant attorneys for the other side who have a waiver? Frankly, Your Honor, it's not clear what they were asking because they didn't specify that that's what they wanted to comment on. So it could be like the plaintiff's attorney could get them for cost, but the defense attorney has to pay more. Or, for example, if we were to proceed on this case as a class action, if we only had a putative class, if I were to try to obtain records of the invoices that were charged to other people, there would be privacy concerns associated with that, and those people arguably may not necessarily be my clients for purposes of being the same. Now help me with something else. Sure. That distinction is informative. Let's say I'm representing somebody in a PI suit. Sure. So I need to see the orthopedic surgeon's medical records. Well, the clinic's going to charge me $5 a page, and they'll charge him $0.25 a page. So I just write up the request so that he signs it, and he's requesting it for himself to be sent to him either at his home address or care of me at my law office address. Seems like that works fine. And the only lawyer who's going to have to pay the $5 a page instead of the $0.25 a page is the insurance company's lawyer. Not fair maybe in terms of litigation, but a permissible interpretation of the regulation that says the individual. Not only is it not fair, it doesn't make sense. Go back. Sure. Did Judge Kleinfeld correctly state what happens? In that situation. You were nodding your head, but you didn't say it. I'd like to know. Do you accept that? I would accept that that is a possibility. You would accept that the lawyer could have the client sign it, the lawyer could write it up, have the client sign it, and give instructions as to where the material should go, and the client signs it, sends it in, and that would result in a lower cost. Correct? In theory, that would actually be the case. On the other hand, if you as a lawyer for X sign your own name and say I'm an attorney for X, please send the records to my office, they will impose the higher charge. Is that the situation? That is the situation. And that's what you're complaining about? That is what we're complaining about. You're complaining about it in a class action? Yes, Your Honor. Okay. Now typically in personal injury cases, the insurance defense lawyer will ask for a half dozen or so signed waivers so that he can make requests and the mail goes to his law office. And that's where the problem comes in. In this class action, it's the same kind of thing, right? It's not the same because the attorneys who are asking for it are the attorneys for the individual. The plaintiff. Exactly. So the attorney is asking for something that is personal to the plaintiff. But the plaintiff has to include a waiver, right? Yes. The lawyer can't just say send to the doctor and say I'm the lawyer for this client and your patient and send me all his medical records. Yes. He can't do that. He's got to attach to that a release. Because the lawyer does have to at least make some showing that he is the agent. Why is this a problem for the class action plaintiff's lawyers? It seems like they could just send notice out to the class saying if you want us to go forward getting damages for you, sign and return the enclosed form and the enclosed self-addressed envelope. And the form will say I, John Doe, class member, request my medical records. Please forward them to me at John Doe, class member, care of, lawyer's office. That was an example I was using, Your Honor, and maybe that was an unfortunate example that I gave you. However, this is not a problem necessarily for the class action plaintiff's attorney. And just to make it more concrete, what the attorney was charged in this situation, which the cost does pass on to the plaintiff for people who experience doing this kind of law, that's what happens, is not just the per-page copying fee but a base fee, and this is in the complaint, of $24.06, a basic fee, undefined, of $32, and a retrieval fee of $15. And that gets passed on to the individual. And you multiply that up with all the different individuals. Wait. Who's asking now? I'm mixed up. Sure. When an individual asks… Who's asking and gets stocked with the $50 or $60 of up-front fees? And basically that's… But who is asking? The attorney is asking on behalf of the individual plaintiff in that situation. So why can't he just avoid the $50 or $60 per plaintiff by having the plaintiff sign the form and having the plaintiff send the request in the envelope the lawyer has prepared for him and request that the records be sent to the plaintiff, care of his law firm? He could, Your Honor, but that makes very little sense, having to go through that route, when in fact what HIPAA is trying to do, both in the statute and regulations, is to give not only plaintiffs the right of privacy, or not plaintiffs, but people who are patients. That's the primary purpose of it. Privacy, but also the right of access. And the regulations do talk about the right of access. The right to give the individual the right of access, the patient the right of access. It's patients that they're concerned about, though, aren't they, in HIPAA? Absolutely. Yeah. But we cite it to a number of analogous cases. They do provide for a representative, somebody who's been designated as the representative of the patient because the patient's unable to act. And that person can get the record. And that's not the individual. Again, that's sort of a third party who's not acting as the individual, but because of some legal incapacity. Well, that's in a health care situation. Correct. Usually a health care power of attorney. But using your example, if somebody is hurt their back, disabled, can't get up and get their records, let's say if they want to give their wife some ability to pick up the records for them. Under the construct that SMART is using, basically that individual is going to have to pay or have his or her spouse pay these additional fees on top of the cost-based fee. They don't mail the records? Excuse me? I thought postage was one of the things that the reg said can be charged, which implied to me that the records could be mailed. You didn't have to go by and get them. Well, in theory, that's something that could occur in that situation. But the person would still have to show some authority to pick up the records if the person were wanting to pick up the records. Let me ask you, I have a couple of questions for you. One, you said that if, taking Judge Kleinfeld's example, the lawyer prepares the document request, attaches it for the client, and the client sends it in and says, send it to me, care of Attorney John Smith, et cetera, et cetera, et cetera. Do these document copying companies, like the one that's involved here, do they actually acknowledge that? I mean, would they honor that request? Not having tested it, I would assume that they would honor it because typically when you do submit an authorization, if it was prepared by the attorney, signed by the attorney rather than the client, the document companies typically will provide the records in that situation. So I would assume in your scenario that's exactly what would happen. But again, there is one case that's out there decided by the California Court of Appeals where they talk about the situation that you had mentioned, hypothetical, where a person could sign and the lawyer will just prepare all the documentation. And the court there did find, despite ruling in a way that we didn't necessarily agree with, that that was an incongruous result given the purposes of the statute. And that's really what we're trying to get at here. Now, we're not saying this. Sure. What did they do? I don't understand. Excuse me. I'm thinking, when I used to represent plaintiffs, when I was on the plaintiff side and not the defense side, I would have my client sign a half-dozen forms saying, I'm so-and-so, please furnish my medical records to Andrew J. Kleinfeld, attorney at law. At his address, my client would date and sign it, and then I just put it in a mail to the clinic and three weeks later I get a packet of records. Are you saying that the California court said that's incongruous under HIPAA? No, it's not that it's incongruous, but what's incongruous is if the attorney prepared the request for records and submitted with it a client-signed authorization in the client's own writing, basically saying it's okay, I'm the person whose records they want, basically saying that it's okay that I give my authority to allow this attorney to get my records, that's the situation that we're getting at. And frankly, when I used to practice personal injury, that's the kind of authorization we requested. How is that different from the kind I used? It's different because there's no express statement where the client or the patient is saying, I am requesting my records and my records to the attorney. In that example, as you just clarified it right there, if the patient and client just used a letter that was prepared by his lawyer and sent it to the document company or sent it to the health care provider and said, but send them to, here's a pre-stamped addressed envelope, care of attorney Andrew Kleinfeld, they would get the documents at the cost, right? They would. In theory, they would. Now, if you take Judge Kleinfeld's example, as he said, when he was practicing law, included a waiver from the client and a release or whatever, an authorization of some sort. And then Judge Kleinfeld sends that off with a cover letter saying, please send these records, I represent this client, here's his release attached, please send them to my office. As an attorney, he's going to have to pay the $60 some odd extra. $60 some odd, right? Correct. Now, the California Court of Appeal in its footnote was referring to the example I gave where it's for the cost. Correct. Isn't that right? That is correct. And you're saying, well, that's incongruent? It is incongruous, and frankly, they filed a concurring complaint. Okay, now here's my next question for you. Go ahead. You know, HIPAA's all about privacy. And, you know, it is a federal law. Sure. They don't have to look to state law. And their whole purpose was to protect the privacy of this information. Why couldn't they, and it looks like this is what they probably did, was to say, look, we're just going to be super cautious when it comes to privacy. And to ensure that, the client has to make the request. Or if the client cannot make the request, has to be his personal representative because of medical necessity. And we don't care. We know there's the lawyers out there. We know all that stuff. But we don't, you know, we're just, we're concerned about privacy. This is the way we best think this is accomplished. And it's just, you know, these things are going to happen, and that's just too bad. And low cost. They're concerned about privacy and low cost for the individual. For the individual. Right. But when the cost is being passed to the individual directly, if the attorney requests it, I don't see how that would sort of accomplish that goal of keeping the cost down for the individual. But how about privacy? Privacy is handled in both situations with some signed document from the patient. And there's no additional cost to the medical record company in evaluating one versus the other. Why should we care about the additional cost if the attorney makes the request when it's so easy to avoid that additional cost just by the attorney writing up the form right for his client? As a practical matter, how it has occurred is that basically plaintiffs make most of the, or attorneys make most of the requests for medical records in this situation. And basically records companies have found a way to basically pass on. They want to skin the lawyers because they figure the lawyers are good for it and they can make more money. I mean, sure. It's not the only industry that does that, but yes. I'm sure that's nine-tenths of the motive. Right. Because this particular section is about money. But it's so easy for the lawyers to outsmart the attempt to skin them by just having their client sign an appropriately worded form. And you don't have to depend on a client to mail it. You can have the law office secretary mail it. If you just sent them to the clients and said, you mail these, yeah, a lot of them wouldn't get done. But as long as you can have them come into your office, sign it, your secretary mails it, what's the problem? What problem is there to be solved? That's not – well, let me answer it this way. That situation does not necessarily present a problem. However, neither the statute nor the regulations require that much. We've provided substantial briefing that an individual – and whatever the regulations may say and whatever the commentary may say, an agent for the individual acts as the individual. And neither the regulations nor the commentary address that. It seems to me that the only time I'm going to have a practical problem is when I'm the lawyer on the insurance defense side and I have to spend almost $1,000 in upfront fees when the plaintiff's been doctor shopping before I find out anything about their medicals, even though I've got a waiver. But they're not the plaintiff. But they're not. They're not the plaintiff. They don't happen to be the – yeah, because they don't happen to be the plaintiff. The thing I'm trying to get at is basically the law talks about individuals. And so how are you going to construe individuals? Well, the defense lawyer is not the agent for the individual. And neither is the medical provider or insurance company. So I can't see where there's a problem in getting the insurance defense lawyer because he's not the agent. Right. And I wouldn't purport to even represent that interest. What I'm trying to get at is are people who actually represent the patient, people who are their agents. And why is it that records companies feel free to charge them $50, $60? HIPAA folks could have written the regulation your way. They didn't. You agree the regulation doesn't favor your argument? I understand that it is an uphill battle. It's a giant moth. I think the regulation does not speak directly to the argument. Maybe save a little bit for rebuttal. Yeah, what I'll do is I'll save a little bit for rebuttal. Thank you. May it please the Court. Adam Badawi for Smart Document Solutions. I want to start by being clear about what this case is. Mr. Webb signed an authorization pursuant to the .508 requirement under this set of regulations. And then Manning Cook, as his attorneys, sent that to the medical provider. And so the other situation that was being addressed is not what's at issue here. You would agree, though, wouldn't you? Or would you? I don't know that you would. I mean, suppose the lawyer does all the work for the client and has the secretary prepare the request and signs it in an envelope from the patient, and it says returns stamped, addressed envelope, care of patient, care of my lawyer. I wouldn't agree with that for several reasons. First, there's a privacy issue. Why not? You're claiming that if the patient individual says, I want my medical records, send them to me, and my address is Peter, patient, care of Andrew J. Kleinfeld, attorney at law, you'd say, oh, we get $60 up front because you didn't use your home address? No. If it goes to the patient himself, him or herself, then they would get the cost-based fee. So if that's what the form says. If that's what the form says, then I agree there's no problem. But if it says send it to my attorney, then there are a number of concerns there. One is that that triggers the privacy concern that is at the heart of this regulation. Two, there's been guidance that says that we do not intend to affect the fees. Does your client charge the $50 or $60 up front when the patient says send them to me and puts in his attorney's address or not? I don't know what my client does in that situation. It's not in the record. And it may be that they do, it may be that they don't. But those aren't the facts. Well, let's say that they do. It seems to me this HIPAA regulation, it is concerned with privacy. It is also concerned with expense. And it expressly limits what can be charged for medical records to the cost. It doesn't allow you to just grab money from people. The reason for the cheaper cost for an individual is because the agency was aware that the reason people request their individual records are for the purposes that are actually enumerated and not enumerated that are specified in HIPAA. One is to protect the integrity of information, and two is to protect the privacy of that information. So sending it to your lawyer does not further either of these purposes. That is what the agency was trying to say. So you're saying you have to keep it secret. I don't understand why that's limited purposes. I mean, a major reason why people get medical records is to find out what the doctor did and what the doctor prescribed when they go to a new doctor. Or because they're wondering if the doctor did the right thing or because they want to do some research themselves and see if what the doctor did is pretty much the standard thing to do. Right, they'd like to verify the integrity and the information in their health record. I thought integrity of records meant substitution of pages, seeing if it's the right patient. No, I think it means that it's an individual who wants to verify what's in their health record and to maybe learn something from it. But it's not meant to – the agency was aware that that was a small number of requests. That's not something that a lot of individuals do, but some of them do it. Usually whenever you go to a new doctor, he wants to see your records from the old one. But the doctor could ask you to sign an authorization as well to request them. It sounds like you're reserving the power to charge the 50 or 60 bucks up front to the patient as long as you can figure out that the records aren't going directly to the patient but are actually going to his lawyer. Have I got that right? No, that's not correct, Your Honor. There's no reservation of power. It's a very simple bright-line rule. When the request comes from the individual to provide them for the individual, they're allowed to have the cost-based fee. In fact, the covered entity is required to send them and may only impose the cost-based fee. When it's pursuant to an authorization, there's no requirement that you send the health record along. Why is that coming from the individual if he says, please furnish my records to Al an attorney if he requests them, and Al an attorney requests them pursuant to that authorization? Why isn't that coming from the individual? It triggers the privacy concern. If you're a covered entity, you have to be very wary of sending health records out to people that aren't individuals without the proper 508 authorization. That sounds like a phony privacy concern. I mean, I just told you disclose, and you say, oh, I'm afraid to disclose because I may be interfering with your right to privacy from the person you told me to disclose to. It's not interfering. I may be in violation of these regulations. If I send protected health care information to a third party without the authorization that's required under Section 508. Well, Judge Kleinfeld just said, you know, the letters from the patient. I am the patient. I want my records. By the way, send them to my attorney, Joe Smith, at this address. That's not the framework that's contemplated by the regulations, and it would be confusing for the covered entity. It wouldn't know. It's confusing about that. It's confusing in the sense that. It's confusing about that because it's pretty clear. The letter from the patient, I want my records, and here's how I want you to send them. Because normally a third party that is going to be receiving records needs to have the authorization that's provided. The authorization is different than what an individual sends, an individual would send. The individual says, I want my health records. Please send them to me. Simple enough. If it's a third party, there's. . . Suppose he says, send them to post office box 1090. Then I would imagine if he's representing his post office box, then I don't anticipate that there would be a problem. That's not our case here, but I don't anticipate that that would be a problem. Suppose the patient says, you know, I never went to medical school. I really have trouble reading medical records. I want you to disclose my protected health information to me, and I'm going to show it to my lawyer. Any problem there? It's not necessary for him to share that information, but I don't think. . . Suppose he does share it, though. Suppose he says, I'm not even going to look at them. I'm just going to show them to my lawyer and to his expert physician so that they can look at them because they'll understand them. At that point, you don't disclose them, right? I think there. . . Or you don't disclose them for cost. The covered entity applies a bright line rule. If the request comes from an individual and they want their health care record, they get them. If they have an authorization under 508 pursuant to the very clear guidance which directs this specific question, if you're using a 508 authorization, then the agency did not intend to provide for the cost-based fee. So the 508 form will always result in the higher charge, the use of a 508 authorization? That's how the agency has interpreted it. That's the way they've interpreted it. Interpreted its own regulations. Okay. And there are reasons for that. It's because going to third parties is not enhancing the purposes of protecting the private. . . There's not a privacy concern there. So just to make this so I may understand everything. Lawyers can be ingenious, so they just do what Judge Kleinfeld sort of elaborated on a little bit earlier, that is they prepare the form for the client, address the envelope, and it says send me my records. I want my records and send it to my home. Gets the cheap price. I mean, I think. . . Right? Right. Gets the cheap price. Right. He then gets his medical records. He walks down. . . He either walks over to the lawyer's office, drops them off, and everything's hunky-dory. That would be true. The vast majority of health record requests are pursuant to these authorizations. There are insurance companies. There are attorneys. There are health care providers that are all doing this, and they could all use that end around to say send them to the person and then hand them to us. And they would get that cost-based fee. But I think the agency was aware that insurance companies and attorneys aren't going to do that to save the $5 or $10 or $20 that they would do to do that. And if everyone was doing that, it would totally destroy this industry because they would have to be charging a cost-based fee, which doesn't even take into account all of the costs. And so they would disappear if all the people who were requesting pursuant to an authorization took that tax. It looked to me like you pay the doctors to have their service to take on this task. That's the allegation in the complaint is that there are – that's the allegation in the complaint. I just let it go like that. I'd like to speak briefly to the agency point. I don't think that the concept of agency has much relevance here. The covered – Why is that? Most of what we do, we do through agents. Like when I make a hotel reservation, actually I don't call the hotel, my secretary does. What I'm anticipating is letters from people in your client's industry saying, we have received more than three requests for medical records in your name. In our experience, this indicates that they are being furnished for some purpose other than your individual use. Therefore, you have to pay $60 each. The problem is that for a covered entity, if someone were to come to them and say, I'm someone's agent and I represent their interests and I would like their health care information. Well, they can't say that unless they have proof that they really are the agent. They need something signed by the person saying, this is my agent. But they don't. The 508 authorization just says that this person has authorized this person to obtain a health care record. And in the example you gave earlier, that could be an attorney on the other side who certainly is not an agent. True. That's why the court in Boogerin, which was presented. What if the person is the agent? Can they then get the records for cost? No, they cannot. Why not? Because they're not, there's an exception for a personal representative. And a personal representative is able to act as the individual. And if you look at the exceptions for the personal representative, they generally apply to, they're for incapacitated people. It's people who have delegated their health care power of attorney. I'm inclined to agree with you. I read the personal representative language, and it looked like it was broader than personal representative in the probate law sense, but narrower than it might be in the lay sense of the language. Right. Nevertheless, I don't understand what the rationality is of not letting individuals act through their agents. I'm thinking if I've broken my leg and my doctor needs to see my hospital record from the emergency room, I have a broken leg, it's too hard to drive over there and get it. So my wife picks it up or my secretary picks it up from the hospital and brings it over to my doctor. They're acting as agents. What's the rationality in not allowing that? It's a personal individual right that is being exercised here. And an agent is not able to exercise the individual rights that belong to the principal. What the agent can do is bind the principal, and the agent can't say – But the principal can't act for himself. That's why he needs some medical records in the first place, because he's got a medical problem. Well, that's why you have an exception for personal representatives, for people who are – But a lot of people don't need a – they don't need to have a conservative appointed for their affairs. They're not senile. They just broke their leg is all. Then there's the mechanism for a proper authorization. And that doesn't even – you don't need – And then you pay 60 bucks. And then – Then you've got a 508 authorization and you pay $60, just when you've broken your leg and you can't earn wages. Well, I mean, that's going to – if there's a lot of time involved, I don't think – those aren't the facts that are alleged, that this is an instantaneous transaction where someone is briefly incapacitated. And the agency is making rules in broad strokes for the general patterns of behavior that are out there. And – What I just described is really, really common. People go to the emergency room, then they go to the doctor the next day. And if the person goes to the doctor the next day and says, I'd like my individual health care record, they get them. And we've created a pot of gold for outfits like smart documents here. I don't think it's fair to characterize it as a pot of gold. I mean, the individual right is to get these records at below cost. And all the infrastructure that's involved in putting together these record information systems wouldn't happen if lots of people were able to get them for below the cost of actually providing the service. I don't think the reg says below cost. It says cost including labor. There's agency commentary that notes that – It says cost including labor and postage. The labor of the actual copying, but the processing cost the agency has specifically excluded, or any kind of overhead charge of that sort. It includes labor. I guess it wouldn't include the million-dollar executive salaries. Again, the agency has acknowledged this right is for providing records at below cost. If we go your way, it's going to mean that patients who've hurt themselves or who have some illness where they have a fever, they have a bad infection and fever, they're going to have to drive around and get their records and bring them to their doctor to avoid wasting hundreds of dollars. Your Honor, that's not the purpose. They're going to have to go to the lab, to the hospital, to the x-ray center, imaging center. These are HIPAA regulations, and HIPAA is not seeking to protect that interest. HIPAA is about protecting the integrity and privacy. And those are the goals of the regulations. Well, there's regulation here designed to make sure patients can get their records without paying a lot of money. That's not about privacy. It's about money. If one wants to verify what's in their health care record, then the agency has decided that furthers the goal of the integrity of the records to allow people to verify them, and that cost shouldn't be a barrier for that limited goal. Let's see. That reasoning is in Boogarin, which is the case that the exact same case decided here in California. First sentence of the discussion section says, in enacting HIPAA, Congress expressed its concern for protecting the integrity and confidentiality of personal medical records. That's a correct characterization of the statute. We looked high and low, and let's see if there are any federal cases that have addressed the issue. The exact issue that's in front of us? There's a reason there are no federal cases, which is that HIPAA does not provide a private right of action. That's why the appellants are using California Business Interpretation Code 17200, which allows you to piggyback onto federal regulations that aren't otherwise actionable. Okay. Anything further? Thank you, Your Honor. Thank you, Counsel. Unless the Court has anything further that you would like plaintiffs to address, plaintiffs will rest. Thank you, Counsel. Thank you. Thank you. Web versus Smart Documents is submitted, and we are adjourned. I'll be back tomorrow. Thank you. Thank you.
judges: Kleinfeld, Paez, Hart